NIGGEMAN *v.* McNAIR.

MORTGAGES—PAYMENT—EVIDENCE.
   In suit to cancel a mortgage and enjoin its foreclosure in which plaintiffs claimed mortgage had been paid, which suit was commenced after defendant assignees of the mortgagee had started foreclosure proceedings by advertisement but almost seven months before the mortgagee died, defendants' circumstantial evidence and claimed inconsistent statements in letters written by one of the plaintiffs *held,* insufficient to overcome affirmative proof of payment presented by plaintiffs.

Appeal from Gladwin; Shaffer (John C.), J. Submitted May 10, 1941. (Docket No. 59, Calendar No. 41,559.)  Decided June 30, 1941.

Bill by Frank A. Niggeman and Maude B. Niggeman against Mary A. McNair and Henrietta E. Wiler to cancel a mortgage and restrain foreclosure. Decree for plaintiffs.  Defendants appeal.  Affirmed.

*Alfred P. Pierson,* for plaintiffs.

*George H. DeMund,* for defendants.

Bushnell, J.   Plaintiffs Frank A. Niggeman and
Maude B. Niggeman, his wife, sought the cancella-
tion of a mortgage and an injunction restraining its
foreclosure.   The mortgage was given in 1928 to
plaintiff Frank A. Niggeman's brother, John P.
Niggeman, Jr., as security for a loan in the sum of
$2,500.   Defendants Mary A. McNair and Henrietta
E. Wiler, daughters of John, commenced foreclo-
sure by advertisement in 1939, several months prior
to the filing of plaintiffs' bill of complaint.   They
claim that the mortgage had been assigned to them
in 1936 by their father and that it had not been paid.
John P. Niggeman, Jr., died on January 6, 1940,
prior to the trial, and consequently the parties were
limited in presenting their testimony by the statute
applicable to matters equally within the knowledge
of the deceased.   3 Comp. Laws 1929, § 14219 (Stat.
Ann. § 27.914).

Frank A. Niggeman and John P. Niggeman, Jr.,
were brothers, John being the elder, and both were
bankers.   John lived in Croswell and was interested
in several banks, among which was one at Beaver-
ton.   The bank at Beaverton was originally a pri-
vate one and known as Niggeman Brothers' Bank,
in which Frank owned a one-half interest, his
brother, Charles, one-quarter, and John, one-
quarter.   It was incorporated in 1912 as a State
bank, and in 1926 it was consolidated with the
Peoples State Bank of Beaverton.   Its condition at
sometime after the consolidation required a stock-
holders' assessment.   Frank was unable to meet this
assessment and John agreed to lend Frank the
money at five per cent.   For this purpose plaintiff

and his wife executed a mortgage on their home in Beaverton to John in the sum of $2,500.

Frank looked after John's affairs at Beaverton while he was in the bank and afterwards. The record contains considerable correspondence between them and testimony with respect to their dealings. The relations between the two brothers were such as would ordinarily exist between an older and a younger man who had considerable confidence in each other's integrity and business judgment, and they were apparently not in the habit of keeping very exact records. John began to live with his daughter, defendant Mary A. McNair, in 1933. He was in poor health for a considerable time before he moved from his home in Croswell to his daughter's home at Albion, and continued in poor health until his death some six and one-half years later. His daughter assisted him in looking after his affairs and had access to his papers and records. The other daughter, Mrs. Wiler, and her husband lived in Detroit. Mrs. McNair's husband was John's physician during his latter days.

In support of plaintiffs' claim that their mortgage debt had been fully satisfied, they produced their son, Charles Henry Niggeman, as a witness. Charles, who was at the time of the trial 27 years of age, was a sanitary engineer living at Manistique. He was born at Beaverton, went to high school there, and graduated from Central State Teachers College at Mt. Pleasant. While he was living at Beaverton he worked for his father in a store which plaintiffs opened after the consolidation of the two banks, and prior thereto he had worked in the bank with his father and mother.

Charles testified at length as to the business affairs of his father and his Uncle John and the manner in which they were handled, and gave the details

of certain payments on the mortgage debt by his father and mother to his Uncle John. They were: $500 obtained by a loan on some life insurance, $200 which had been borrowed by his mother, a credit of $1,100 by reason of a deed given by his father to John covering an undivided interest in lands, and a number of smaller cash payments which Charles said were made out of the receipts of the store. These items, according to plaintiffs' view of the case, totalled $2,179. Charles stated that he did not know about all of the payments but he did know that, when the deed was given by his father to his Uncle John, it was understood between them that this was to clean up all of the indebtedness on the mortgage, and that, in return for the work his father performed for his Uncle John, John agreed to turn over to Frank a one-quarter share of his Brown City Bank stock.

The trial judge, in discussing the testimony of Charles, said:

"The court finds itself in view of the testimony bearing on the main point in the position of either accepting all of the testimony of Charles Niggeman or rejecting it all. I can see no reasonable grounds for believing this part of the testimony and disbelieving any other part.

"It seems to me in view of the testimony in this case, I will either have to wholly believe all that he testified to in regard to payment, or disregard it all, and from all of the testimony in the case I can only come to the conclusion that he did not tell a lie about this thing, although it does seem inconsistent with some of the statements in letters made by his mother, but in view of the fact that there is no testimony directly controverting it, I do find that his statements made here as regards payment are undisputed; that the payments claimed to have been made in full settlement, claimed to be made were

made, and that the mortgage was at the commencement of the foreclosure proceeding paid. A decree may be entered along that line, and an injunction if necessary preventing the foreclosure.''

The testimony of Charles has been carefully examined in the light of the foregoing observations, and we find it impossible to disagree with the conclusion reached by the trial judge. The question of payment is one of fact. The bill of complaint to cancel the mortgage was filed on May 16, 1939, almost seven months before John's death. Defendants relied almost entirely on circumstantial proof and claimed inconsistent statements in letters written by Maude Niggeman. We agree with the trial judge that defendants' proofs are not sufficient to overcome the affirmative testimony of Charles that the debt had been paid.

The decree cancelling and discharging the mortgage is affirmed, with costs to appellees.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.